UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATARZYNA WOLOSZYNSKA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC., et al.,<br><br>Defendants. | Case No. 23-cv-00636-BLF<br><br>**CORRECTED ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE**<br><br>[Re: ECF No. 26] |

This case is about Defendants' right to use a photo of Plaintiffs in a fictional television show that contains content considered by Plaintiffs to be offensive and inappropriate. Plaintiffs' First Amended Complaint alleges that Defendants misappropriated the likeness of and negligently inflicted emotional distress upon Plaintiffs by using a picture of eight-year-old Maja Woloszyńska and her father Piotr Woloszyński in the Polish television show *Mire '97*. ECF No. 24 ("FAC"). Defendants have filed a special motion to strike both claims under California Code of Civil Procedure Section 425.16, and alternatively, a motion to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 25 ("Mot."). After careful consideration, the Court GRANTS Defendants' special motion to strike.[1]

I.  **BACKGROUND**

Plaintiffs are eight-year-old Maja Woloszyńska, her father Piotr Woloszyński, and her

---

[1] The Court granted Defendants' Special Motion to Strike on October 17, 2023. ECF No. 55 ("Order"). The Court corrects the Order by removing a screenshot that purportedly depicted Piotr and Maja. Defendants acknowledge that "[t]he screenshot, which does not depict the Plaintiffs, is from a version of [the Show] that has not been published on Netflix's service (Dkt. 26-10) and that Netflix inadvertently filed with their Motion to Strike instead of the version actually published on Netflix's service." ECF No. 58. Furthermore, "[t]he Parties agree that that the inclusion of any screenshot is not necessary to the decision." *Id.*

mother Katarzyna Woloszyńska. FAC ¶ 5. Piotr and Maja are aspiring actors who have appeared in a variety of Polish television and film productions. *Id.* ¶ 8. On August 31, 2020, a casting agency texted Katarzyna about a photoshoot opportunity for Piotr and Maja for an upcoming television show. ECF No. 26-4; FAC ¶ 9. Katarzyna asked what the shoot was for, and the agency told her it was for the show "Elza from the 90's." *Id.* Plaintiffs agreed to the photoshoot and were paid 310 Polish dollars (PLN). *Id.*; FAC ¶ 9; ECF No. 26-3 ("Włoczkowski Decl.") ¶ 4.

A photograph from the photoshoot ("the Photograph") subsequently appeared three times in the second season of the Polish television show *Mire '97* ("the Show"), a crime drama available for streaming on Netflix. FAC ¶ 10; Mot. at 6. "The basic plot of the second season of the Show revolves around [Sergeant Jass, a police officer] who has been demoted due to the mishandling of a case" where a father "pleaded guilty to the rape and murder of his daughter and subsequently committed suicide in jail." *Id.* ¶¶ 11-12. Sergeant Jass carries around and "repeatedly reflects on" the Photograph, which depicts the father and daughter. *Id.* ¶ 11. Her reflection "sets the groundwork for [her] character transition." *Id.*

Plaintiffs learned about Defendants' use of the Photograph shortly after the Show premiered when friends, family, and acquaintances contacted them to ask if they were aware of the "extreme mischaracterization of them" by the Show. *Id.* ¶ 13. Plaintiffs allege that when Katarzyna and Piotr viewed the episodes where the Photograph is used, it caused them severe shock and extreme emotional distress. *Id.* Plaintiffs further allege that Piotr has been mocked and scorned at his workplace due to the Show and Katarzyna has become worried about the security of her children. *Id.* ¶ 15. Plaintiffs claim that they did not consent to Defendants' use of the Photograph in the Show. *Id.* ¶ 9. Instead, Plaintiffs claim they thought they would be informed before any of the images from the photoshoot were disseminated and that Defendants knew Plaintiffs would not consent to this use of their likeness. *Id.* ¶¶ 9, 16–18.

Two claims remain in the FAC. Claim One alleges misappropriation of likeness (FAC ¶ 21–30) and Claim Four alleges negligent infliction of emotional distress. *Id.* ¶ 31–38. Defendants move to strike both claims under California Code of Civil Procedure Section 425.16, and alternatively to dismiss both under Federal Rule of Civil Procedure 12(b)(6). Mot. at 9, 22.

## II. LEGAL STANDARD

California's "anti-SLAPP statute makes available a special motion to strike meritless claims early in litigation—but only if the claims arise from acts in furtherance of a person's 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 139 (2019) (quoting Cal. Code Civ. Proc. § 425.16(b)). Courts evaluate an anti-SLAPP motion in two steps. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 884 (2019) (quoting *Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057, 1061 (2017)).

An anti-SLAPP motion may be brought against state law claims in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9th Cir. 2005). Where an anti-SLAPP motion is based on a complaint's facial legal deficiencies, the motion is "treated in the same manner as a motion under Rule 12(b)(6)." *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018). When evaluating the factual sufficiency of a claim, the Rule 56 standard applies. *Id.*

## II. DISCUSSION

Defendants assert that Claim One (misappropriation of likeness) and Claim Four (negligent infliction of emotional distress) should be dismissed under California's anti-SLAPP statute because they "arise[] directly from Netflix's exercise of its constitutional right of free speech in connection with a public issue." Mot. at 1. The Court applies the two-step test described in *Wilson* to Defendants' anti-SLAPP claims. 7 Cal. 5th at 884.

### A. Defendants' Activity is Protected

At step one, a defendant must show that its actions "fall within one or more of the four categories of acts protected by the anti-SLAPP statute." *Id.* (cleaned up). Under the "catchall provision," one such act is a "statement" made in furtherance of the exercise of "the constitutional right of free speech in connection with a public issue or an issue of public interest." *FilmOn*, 7

3

Cal. 5th at 139–140 (quoting Cal. Code Civ. Proc. § 425.16(e)(4)).  To determine if the activity falls under the catchall provision, *FilmOn* requires courts to consider "the context as well as the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest." *Id.* at 149.  "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech." *Id.* at 149 (quoting Cal. Code Civ. Proc. § 425.16(e)(4)).  "Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." *Id.* at 149–150.  In assessing context, courts should consider "audience, speaker, and purpose." *Id.* at 152.

### 1. Defendants' Activity Implicates an Issue of Public Interest

The first question is what issue of public interest the speech implicates.  Defendants argue that the Show "touches on crime and death, grief, the consequences of war, redemption, female sexuality and loyalty." Mot. at 11.  Plaintiffs respond that since the Show "merely touches on significant topics," it should not garner First Amendment protections.  ECF No. 33 ("Opp.") at 5.

Plaintiffs add that because they are "relative unknowns . . . [they] were in no way an issue of public interest, and the Show could have easily been made either without use of any picture or using the picture of models that had actually consented." *Id.* at 6.  Defendants state in reply, "that a statement is about a person or entity in the public eye may be sufficient, but is not necessary, to establish the statement is free speech in connection with a public issue or an issue of public interest."  ECF No. 40 ("Reply") at 3 (quoting *Wilson*, 7 Cal. 5th at 902).

The Court finds that Defendants' use of the Photograph in the Show implicates an issue of public interest.  The Show encompasses topics including crime, death, abuse, and grief, that are clearly issues of public interest, and the Photograph is a prop for exploring those themes. That Plaintiffs are relative unknowns does not change this analysis because the themes of the Show and use of the Photograph generate the issue of public interest.  *Id.*; s*ee also Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 144 (2011) ("We find no requirement in the anti-SLAPP statute that the plaintiff's persona be a matter of public interest.").

**2. Defendants' Activity is Functionally Related to the Issue of Public Interest**

The more challenging question is whether a "functional relationship exists between the speech and the public conversation about some matter of public interest." *FilmOn*, 7 Cal. 5th at 149–150. The "catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest." *Id.* at 150 (quoting *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003)). "[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." *Id.* (quoting *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). "'The fact that a broad and amorphous public interest can be connected to a specific dispute' is not enough." *Ibid.*

The Court of Appeal's decision in *Tamkin* is instructive. There, married real estate agents sued for defamation and false light after a writer used their names and certain traits for characters in an episode of "CSI." *Tamkin*, 193 Cal. App. 4th at 139. On appeal, the court held that the writer's action was in furtherance of free speech rights because it "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show." *Id.* at 143. Specifically, defendants showed there was "a connection between the use of plaintiffs' names and the creative process underlying" the episode because "plaintiffs' full names were used as placeholders for guest characters who would appear on the show." *Id.* at 144.

Plaintiffs argue that Defendants "cannot show that those specific statements and the use of the picture contribute to the public discourse." Opp. at 7. But Defendants explain how the Photograph plays an integral role in Sergeant Jass's backstory in the Show. At one point in the Show, "Sergeant Jass explains that the girl [in the Photograph] was found raped and murdered, that she suspected the father [in the Photograph] from the start, and that she grilled him for 36 hours until he confessed." Mot. at 6–7 (citing ECF No. 26-2, ECF No. 26-10 (Ep. 5 at 46:15-46:20)). "[Sergeant Jass] explains that two days later, [the father hanged] himself in his prison cell, but that another girl was found killed in exactly the same way as the girl in the Photograph six months after the father's death." *Id.* at 7 (citing ECF No. 26-2, ECF No. 26-10 (Ep. 5 at 46:00-47:00)).

Plaintiffs' own allegations also connect the Photograph to the Show's themes. As the FAC

5

explains, "the Show revolves around a police sergeant who has been demoted due to the mishandling of a case involving a father and daughter." FAC ¶ 11. It is "insinuated throughout the season that this case involving Plaintiffs sets the groundwork for the police sergeant's character transition." *Id.* The FAC makes clear that the Photograph is symbolic of Sergeant Jass's personal conflict and development throughout the Show.

Both Plaintiffs' and Defendants' descriptions of the Photograph connect it to the creative process and themes of the Show. The Photograph is a symbolic reminder of the police sergeant's failures, motivations, and growth. The Photograph helps tell the story and advances the Show's themes. Thus, the Court concludes that there is a functional relationship between the Photograph and the matter of public interest.

    **B.**    **Plaintiffs' Have Not Established a Probability of Prevailing on Their Claims**

Once the Court determines that the activity is protected, "plaintiffs may defeat the anti-SLAPP motion by establishing a probability of prevailing on their claim." *Navellier v. Sletten*, 29 Cal. 4th 82, 95 (2002). The plaintiff need only "demonstrate its claims have at least 'minimal merit.'" *Wilson*, 7 Cal. 5th at 884 (quoting *Park*, 2 Cal. 5th at 1061).

Defendants make three arguments, which the Court considers in turn. First, Defendants assert in a factual attack to Claim One for misappropriation of likeness that Plaintiffs consented to Defendants' use of the Photograph. Mot. at 12–16. Second, Defendants assert in a facial attack to Claim One that even if they did not obtain consent, their actions were protected speech. *Id.* at 16–19. Third, Defendants assert in a facial attack to Claim Four for negligent infliction of emotional distress that they owed no duty to Plaintiffs and the Photograph was not used in the way Plaintiffs allege. *Id.* at 19–22. Thus, the Court applies the Rule 56 standard to Defendants' first argument, but the 12(b)(6) standard to Defendants' second and third arguments. *Planned Parenthood*, 890 F.3d at 833–34.

        **1.**    **Misappropriation of Likeness**

            a.    The Parties' Experts Dispute Whether Plaintiffs Consented

Plaintiffs accuse Defendants of misappropriation of likeness. To prevail on this claim, a plaintiff must show "(1) the defendant's knowing use of the plaintiff's identity; (2) the

appropriation of plaintiff's name or likeness to defendant's advantage; (3) lack of consent; (4) resulting injury; and (5) a direct connection between the alleged use and the commercial purpose." *Palermo v. Underground Sols., Inc.*, No. 12-CV-1223-WQH (BLM), 2012 WL 3134255, at *13 (S.D. Cal. Aug. 1, 2012) (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)) (cleaned up).

Plaintiffs allege that they did not consent to Defendants' use of the Photograph. Specifically, the FAC states, "Defendants knew that Plaintiffs would not consent to their likenesses being used to depict violent and sexual characters." FAC ¶ 23. Plaintiffs further allege that "Defendants knew that Plaintiffs Piotr and Katarzyna would not consent to their daughter being portrayed in a violent and sexual manner—especially in a pedophile context" and that "Defendants knew that Maja, as a minor child, could not consent to her likeness being used in a violent and sexual manner and that she may suffer extreme emotional distress because of the Defendants' actions." *Id.* ¶ 24.

Defendants make a factual attack under the anti-SLAPP statute, arguing that Plaintiffs cannot sustain a claim for misappropriation of their names and likenesses because they consented to Defendants' use of the Photograph in the Show. The Parties do not dispute that Polish law applies to the question of consent and that under Polish law, the legal ability to use a person's image is regulated by the Copyright and Related Rights Act in Poland, Article 81 ("Article 81"). ECF No. 26-6, Declaration of Rafał Sarbiński ("Sarbiński Decl.") ¶¶ 7-8, Ex. B; ECF No. 34-1, Declaration of Arkadiusz Michalak ("Michalak Decl.").

Defendants present evidence and expert testimony that they obtained consent. According to Defendants' expert, under Article 81, the dissemination of an image generally requires the permission of the person that is in the image, but "[i]n the absence of an explicit reservation, such permission shall not be required if the person has received the agreed payment for posing." Mot. at 13 (citing Article 81, Sarbiński Decl. ¶¶ 9–10, Ex. B). According to Defendants' expert, "[t]his means that acceptance of agreed-upon remuneration by a model in exchange for posing for a photograph substitutes for any need to obtain express consent for the use of that photograph." *Ibid.* Defendants' expert also provides an exception to consent: Article 81 "provides that

7

1    permission is not required for dissemination of the image of a person who appears as a detail of 'a
2    whole,' which Polish courts have interpreted to include a person whose image appears briefly in
3    an audio-visual work." *Id.* at 13 (citing Article 81, Sarbiński Decl. ¶ 12, Ex. B).
4        Defendants then provide evidence showing that Plaintiffs consented. Defendants present
5    evidence that Katarzyna scheduled the photoshoot, made no explicit reservation regarding the use
6    of any image, and did not ask to be notified before the publication of any image. ECF No. 26-4 at
7    6. Defendants also present evidence showing that Plaintiffs were paid for the photoshoot. ECF
8    No. 26-5 at 2. Defendants' expert then opines based on this evidence that "no further grant of
9    permission for use of Plaintiffs' image was required under [Article 81]." Mot. at 13 (citing
10   Sarbiński Decl. ¶¶ 10–11).
11       Plaintiffs' expert disagrees. Specifically, Plaintiffs' expert opines that, under Polish law,
12   parents cannot legally consent to any depiction of their child's image connected with pedophilia or
13   rape. Opp. at 10 (citing Michalak Decl.). Plaintiffs' expert writes:

> In other words: parents even acting jointly or alternatively the court acting in case of disagreement of the Maja's parents can not effectively grant a consent for use of child image in the sexual context since such use shall always be treated as contrary to child interests and for that reason invalid under principles of Polish law.

17   Michalak Decl. at 4. Defendants' expert replies that "based on [his] review of the relevant scenes
18   in [the Show], the use of the Plaintiff's image in [the Show] does not constitute a 'sexual context'
19   under Polish law." ECF No. 40-1, Second Declaration of Rafał Sarbiński ("Sarbiński Reply
20   Decl.") at ¶ 20.
21       The Court finds that this disagreement between Plaintiffs' expert and Defendants' expert is
22   a classic "battle of the experts" that survives this factual challenge under the Rule 56 standard.
23   The dispute is simple. Plaintiffs' expert Dr. Michalak thinks that under Polish law, the
24   Photograph was used in a "sexual context" and thus neither a minor nor her parents could consent.
25   Michalak Decl. at 4. Defendants' expert, Mr. Sarbiński replies that in his assessment, use of the
26   Photograph in the Show is not sexual content under Polish law. Sarbiński Reply Decl. at ¶¶ 16–
27   20. Because Plaintiffs have met their burden under section 425.16, the Court cannot grant the
28   motion to strike on consent grounds. *Wilson*, 7 Cal. 5th at 891 ('[t]he court does not weigh

1  evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has
2  stated a legally sufficient claim and made a *prima facie* factual showing sufficient to sustain a
3  favorable judgment.") (quoting *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal. 5th
4  931, 940 (2019)).

b.  Defendants' Use of the Photograph is Protected Speech

Defendants argue in the alternative that even if Plaintiffs did not consent, Defendants' use of the Photograph is protected by the First Amendment. Mot. at 15. Unlike Defendants' argument that Plaintiffs consented, which was a factual attack, this is a facial attack because Defendants do not rely on facts beyond what is alleged in the FAC.[2]

"Under the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional.'" *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (citing *Guglielmi v. Spelling–Goldberg Productions*, 25 Cal. 3d 860, 871–72 (1979) (Bird, J. concurring), *Comedy III Prod., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 398 (2001)). The defense extends "to all forms of expression, including written and spoken words (fact or fiction), music, films, paintings, and entertainment." *Ross v. Roberts*, 222 Cal. App. 4th 677, 687 (2013) (quoting *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 58 (2006)).

When artists are faced with a right-of-publicity challenge to their work, they "may raise as an affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements *or* that the value of the work does not derive primarily from the celebrity's fame." *Comedy III*, 25 Cal. 4th at 407. To determine whether a work containing a celebrity's likeness is transformative, the court asks whether it "is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Id.* at 406. "Another way of stating the inquiry is whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity

---

[2] The Court incorporates the content of the Show by reference into the FAC, and thus considers it for the facial attack. Neither of the Parties' have disputed the various descriptions of the content of the Show. The only dispute is the application of the law.

9

is the very sum and substance of the work in question." *Id.* Any doubts about the transformative nature of a use can be resolved by asking whether "the marketability and economic value of the challenged work derive[s] primarily from the fame of the celebrity depicted[.]" *Id.*

The case *Vijay v. Twentieth Century Fox Film Corp.* applies this defense to a similar set of facts. No. CV 14-5404 RSWL EX, 2014 WL 5460585 (C.D. Cal. Oct. 27, 2014). There, the plaintiff brought claims of misappropriation of likeness and right of publicity relating to use of his likeness in the movies "Titanic" and "Ghosts of the Abyss." *Id.* at *1. The court first found that the films were protected as transformative because both films were expressive works, "that Plaintiff's appearance is but a minuscule portion of each of [both] films, . . . that [h]is scenes appeared for seconds at most in nearly five hours of film, and even his filmed scenes were transformed with special effects and music in the final product." *Id.* at *4. The court added that "[i]t can hardly be said that Plaintiff's appearance is 'the very sum and substance' of either work" or that "it is Plaintiff's likeness that is generating such economic value that Plaintiff's right to his appearance must be protected above Defendants' First Amendment rights to use his likeness in an expressive work." *Id.*

Defendants first argue that their use of the Photograph is transformative. Defendants explain that the Show contains transformative elements because "the Photograph is just one small piece of the raw materials from which [the Show] is crafted." Mot. at 17. Defendants add that "[the Show] is the product of the performances of scores of actors in speaking roles, a complex storyline and screenplay, cinematography, and set design, among other features." *Id.* Plaintiffs respond that the image was not transformed because "[Plaintiffs'] image was used virtually unmodified with their literal depictions." Opp. at 13.

Defendants alternatively argue that the value of the work is also protected because it does not "derive primarily" from Piotr and Maja's fame. *Comedy III*, 25 Cal. 4th at 407. The Parties don't dispute that Piotr and Maja are "relative unknowns." Opp. at 6; *see also* Mot. at 19. But Plaintiffs insist that "[n]oncelebrities have a greater interest and more right to control their image than a celebrity would, and noncelebrities have far fewer options to defend their image than a celebrity, who by definition has the public's attention, would." *Id.* at 13 (citing *Comedy III*, 25

Cal. 4th at 397).

The Court agrees with Defendants. Plaintiffs improperly focus on whether the Photograph itself was transformed, but that is not the test. As Defendants point out, the Photograph is a small part of a complex and elaborate television production, and the scenes in the Show are transformed by music, dialogue, and film editing in the final product. *Vijay*, 2014 WL 5460585, at *4. Like an extra in "Titanic," the Photograph is hardly the very "sum and substance" of the Show. *Id.* (quoting *Comedy III*, 25 Cal. 4th at 406). Rather, a generic image of a father and daughter has no inherent or intrinsic meaning—one could write a thousand different stories onto the Photograph. Finally, contrary to Plaintiffs' claims, the Court finds nothing in *Comedy III* to suggest that non-celebrities have "greater interest and more right to control their image." Opp. at 13. In fact, *Comedy III* holds the opposite, that "[w]hen the value of the work comes principally from some source other than the fame of the celebrity—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present to warrant First Amendment protection." 25 Cal. 4th at 407. The Court therefore finds that Defendants' use of the Photograph is transformative and not derived primarily from Plaintiffs' likeness.

Having found that Defendants' alleged conduct is connected to an issue of public interest and that Plaintiffs' misappropriation of likeness claim is not legally sufficient, the Court GRANTS Defendants' special motion to strike Claim One.

**2. Negligent Infliction of Emotional Distress – Plaintiffs Fail to Allege Duty**

Plaintiffs accuse Defendants of negligent infliction of emotional distress. To prevail on this claim, Plaintiffs must show duty, breach, causation, and damages. *Ess v. Eskaton Props.*, 97 Cal. App. 4th 120, 126 (2002). "In a negligence action, duty is the expression of the sum total of the considerations of policy that lead the court to conclude whether a particular plaintiff may maintain a cause of action." *Id.* (citing *Dillon v. Legg* 68 Cal. 2d 728, 734 (1968)). "The major considerations include the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and the consequences to the community of

11

imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved." *Id.* "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 961 (9th Cir. 2013) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).

Defendants cite two cases with facts similar to the instant case. First, in *Baugh v. CBS, Inc.*, a mother and her daughter asserted a claim for negligent infliction of emotional distress under California law after they were shown in a television broadcast on street crimes. 828 F. Supp. 745, 749–50 (N.D. Cal. 1993). The mother alleged that she had agreed to let the television crew film in her house on the condition that she would not appear on television. *Id.* at 752 ("I said I had no objections to them doing some filming of Elaine for the DA's office, as long as I was not going to be on anyone's television. The crew member said, 'Okay.' If they had not agreed to my condition, I would not have permitted them to stay."). She asserted that defendants agreed, but then broadcast her and her daughter's identities in at least some versions of the television show. *Id.* at 750 n.1. In granting defendants' motion to dismiss the negligence claim, the court rejected plaintiffs' assertion that defendants "had a legal duty not to reveal . . . private facts" about her and her daughter in the broadcast because the plaintiffs "provid[ed] no authority for the proposition that a legal duty arises in this situation." *Id.* Second, in *Gangland*, the Ninth Circuit held that the plaintiff, a "former prison gang member and police informant" who "assert[ed] that he agreed to be interviewed" only on the condition of anonymity, "fail[ed] to cite any authorities demonstrating that Defendants had a legal duty not to reveal private facts about him during the broadcast." 730 F.3d at 961.

Defendants argue that, like the plaintiffs in *Baugh* and *Gangland*, Plaintiffs "allege no facts that, if true, indicate that Netflix and Plaintiffs had a special relationship giving rise to a duty or that Netflix otherwise assumed a duty." Mot. at 19. Defendants also argue that they had no legal duty because they weren't in contact with Plaintiffs, and had used a series of contracted agencies

12

1     to acquire the Photograph. *Id.* at 20.

2           Plaintiffs respond that "a special relationship is not needed when there is an imposed duty"
3     and that "courts have directly found that there is 'a legal duty to obtain valid consent before using
4     [a] photograph for commercial purposes.'" Opp. at 13 (quoting *Bonner v. Fuji Photo Film*, No. C
5     06-04374 CRB, 2007 WL 3171258, at *5 (N.D. Cal. Oct. 26, 2007)). Defendants dismiss
6     Plaintiffs' use of *Bonner*, writing that "*Bonner* did not rely on any authority recognizing such a
7     duty." Reply at 13.

8           The Court finds that Plaintiffs have not alleged facts demonstrating that Defendants owe
9     them a legal duty. Plaintiffs allege that they "were approached by a casting agency working for
10    the Defendants under the guise of taking photographs to be used for a potential, undisclosed
11    film/series opportunity" and that they "allowed themselves to be photographed but did not provide
12    consent for use of the photographs in the Show, instead thinking that, based on the Defendants'
13    representations, they would be later informed before any dissemination of said photographs into
14    the public media." FAC ¶ 9. But these allegations are vague and conclusory; the casting agency
15    is not a named defendant and Plaintiffs don't allege facts about how the casting agency "work[ed]
16    for" Defendants or how Defendants communicated with Plaintiffs. Even if the FAC connects the
17    casting agency to Defendants, Plaintiffs (like those in *Baugh* and *Gangland*) allege little more than
18    their own "thinking" that they would be notified before the Photograph was distributed.

19          Instead, Plaintiffs rely on *Bonner* for the idea (that stands in stark contrast with *Baugh* and
20    *Gangland*) that there is always a "legal duty to obtain valid consent before using [a] photograph
21    for commercial purposes." 2007 WL 3171258, at *5. But the Court agrees with Defendants that
22    the *Bonner* court did not analyze whether there was such a duty, and this Court chooses not to
23    follow *Bonner*. In *Bonner*, a mother sued over the defendants' use of her daughter's photo in a
24    stock image database, but the Court granted summary judgment for the defendants on the
25    negligence claim because there was evidence that the mother consented to their use of the photo.
26    *Id.* at *1, *5. While *Bonner* says there is "little doubt that the defendants owed Bonner a legal
27    duty" (*id.* at *5) that court does not engage in any legal analysis (such as applying the *Ess* factors)
28    that would help this Court apply *Bonner* to the instant case. *Id.*

Plaintiffs' allegations leave the Court with little to evaluate the *Ess* factors. Plaintiffs do allege facts related to the extent of the injury suffered. FAC ¶¶ 13–15, 34–35. But Plaintiffs do not allege facts that would help the Court assess the foreseeability of harm to Plaintiffs, connection between Defendants' conduct and the injury suffered, moral blame, policy of preventing future harm, or burden to the Defendants. *See Ess*, 97 Cal. App. 4th at 126. Plaintiffs don't name the casting agency that took the Photograph or describe its connection to Defendants beyond "working for the Defendants." FAC ¶ 9. Plaintiffs make only vague and conclusory allegations that Defendants misled Plaintiffs or knew that Plaintiffs would oppose any use of the Photograph in the Show. *Id.* ¶¶ 9, 16–18. And Plaintiffs allege nothing about Defendants' editorial influence (if there was any) on the creation and production of the show or the decision to use the Photograph in the Show. As such, Plaintiffs fail to allege sufficient facts to support a duty of care or to cite any authorities demonstrating that Defendants had any duty, legal or otherwise, not to use the Photograph in the Show.

Having found that Defendants' alleged conduct is connected to an issue of public interest and that Plaintiffs' negligent infliction of emotional distress claim is not legally sufficient, the Court GRANTS Defendants' special motion to strike Claim Four. Because the Court finds that Plaintiffs have not alleged that Defendants owed them a duty, the Court need not address whether Defendants breached any duty.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that the district court should "freely give leave when justice so requires" and "this policy is to be applied with extreme liberality." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). If an anti-SLAPP attack is facial, the Court may grant leave to amend, but is not required to if it thinks amendment will be futile. *Id.*

The Court dismisses Plaintiffs' misappropriation of likeness claim with prejudice. While consent is a factual issue, whether the Show is protected speech is a facial issue. All the same, amendment would be futile. Plaintiffs' misappropriation of likeness claim fails under *Comedy III* because 1) Defendants' use of the Photograph in the Show is transformative and 2) the value of

the Show does not "derive primarily" from the use of Plaintiffs' likeness. No additional facts would cure Plaintiffs' claim, and therefore it would be futile to amend. *Maddow*, 8 F.4th 1148, 1160; *cf. Vijay*, 2014 WL 5460585, at *5 (granting motion to dismiss without leave to amend on a similar set of facts).

However, the Court dismisses Plaintiffs' negligent infliction of emotional distress claim without prejudice. Defendants' attack on Plaintiffs' claim was facial and the Court finds that Plaintiffs' allegations are deficient. It is possible, although possibly unlikely, that Plaintiffs could cure the defect by alleging facts showing that Defendants owed Plaintiffs a duty not to use the Photograph in the Show without consent.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' Special Motion to Strike Plaintiffs' First Claim for Misappropriation of Likeness is GRANTED. Plaintiffs' First Claim is hereby DISMISSED WITH PREJUDICE.

2. Defendants' Special Motion to Strike Plaintiffs' Fourth Claim for Negligent Infliction of Emotional Distress is GRANTED. Plaintiffs' Fourth Claim is hereby DISMISSED WITHOUT PREJUDICE.

Plaintiffs shall file an Amended Complaint only as to Claim Four, negligent infliction of emotional distress. No additional claims or parties may be added without leave of the Court. Any amendment shall be filed no later than November 7, 2023.

Dated: October 30, 2023

_____
BETH LABSON FREEMAN
United States District Judge